UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 12 C 7613 |
| v. | Judge James B. Zagel |
| NORTHERN ILLINOIS SPECIAL RECREATION ASSOCIATION, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

The United States of America, by its Attorney for the Northern District of Illinois, filed a one-count complaint alleging the Northern Illinois Special Recreation Association ("NISRA") discriminates against individuals with epilepsy in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and its implementing regulation, 28 C.F.R. Part 35. Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed before the Court. For the reasons discussed below, I deny the motion.

**I. Background**

The following facts are accepted as true for the purpose of considering this motion. NISRA, a public entity within the meaning of the ADA, provides year-round recreational activities for children and adults with disabilities in northern Illinois.

NISRA does not employ medical personnel, but employs a staff experienced with working with people with disabilities. Typically, one counselor is responsible for the supervision of two to four participants, but at times, NISRA provides one-on-one service for its participants.

Also, NISRA staff is trained in administering epinephrine auto-injector (Epi-pen) shots, dispensing asthma medication, and feeding children with gastronomy feeding tubes. Moreover, staff is trained in responding to seizures pursuant to NISRA's seizure management policy.

Participants of NISRA's programs with a history of seizures submit a seizure plan in which their doctor describes the type of seizures they experience, the medications they currently take, and the protocol to follow in the case of a seizure.

M.M. and N.R., both diagnosed with epilepsy, are former participants of NISRA's summer camp program. Because of their epilepsy, M.M. and N.R. have a history of experiencing tonic-clonic seizures (also known as grand mal seizures) and, because of such history both M.M. and N.R. were prescribed Diastat AcuDial (Diastat).

Diastat is the only FDA-approved medication for out-of-hospital treatment of emergency seizures. The sooner Diastat is administered, the more effective it will be. Diastat is injected rectally with a pre-filled plastic syringe: it was developed so people without medical training can administer the medication.

After its 2008 summer-camp session, NISRA changed its policy to no longer administer Diastat. M.M. has since experienced a recent onset of tonic-clonic seizures. Attendance at the camp, coupled with NISRA's refusal to administer Diastat, makes participation in NISRA's programs a risk to her health and life if an emergency presented itself. Similarly, N.R.'s parents requested N.R.'s personal aide (already provided by the camp) to be allowed to administer Diastat if needed. NISRA refused and replied the aide would only monitor for seizures and call 911 if a seizure occurred.

## II. Legal Standards

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a

claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide "a short and plain statement" showing that they are entitled to relief. This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Though a complaint need not contain "detailed factual allegations, a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The Court will only grant a motion to dismiss if "it appears beyond doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

In considering a motion to dismiss, the Court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted).

### III. Analysis

The ADA is a comprehensive civil rights law enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 1201(b)(1). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Liability under Title II of the ADA need not be premised on an intent to discriminate; rather, discrimination may be established by evidence that (1) the defendant intentionally acted on the basis of the disability, (2) the defendant

refused to provide a reasonable accommodation, or (3) the defendant's rule disproportionally impacted disabled people. *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999).

In its motion to dismiss, NISRA asserts: the complaint does not allege a denial of benefits "on the basis of" disability, the requested accommodation is unreasonable, and the requested accommodation would fundamentally alter the nature of NISRA's services and subject NISRA to an undue amount of liability. Each argument will be addressed in turn.

**A.    Causation**

First, Defendant asserts no individuals were denied access to NISRA's programs "because of" their disability. The language "'[o]n the basis of' means there must be a 'causal link' between the challenged action and the disability." *Wisc. Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir.2006).

Defendant relies on the fact that M.M. and N.R. have participated in NISRA's programs and the facial neutrality of NISRA's policy not to administer drugs "in contradiction to established medical guidelines." But such an assertion misconstrues Plaintiff's allegations. The United States' position is not that NISRA denied M.M. and N.R. admission to its programs or that NISRA employs a policy that facially discriminates against epileptic participants. Under the Title II regulations, reasonable modifications in policies are required when necessary to avoid discrimination on the basis of disability. *See* 28 C.F.R. § 35.130(b)(7). Plaintiff's claim, therefore, depends upon a showing that NISRA could have reasonably accommodated M.M. and N.R., but refused to do so. *See McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 461 (6th Cir. 1997). Failure to make a reasonable accommodation, regardless of discriminatory intent, is sufficient to demonstrate a causal connection between a disability and

the denial of a benefit. *See Washington*, 181 F.3d at 846–47.

Plaintiff's complaint alleges that staff members are trained specifically to respond to participants' seizures. It further alleges that participants submit a seizure plan in which their doctors describe the type of seizures they experience, the medications they currently take, and the proper protocol to follow in the case of a seizure. According to the complaint, NISRA's policy exposes its epileptic participants to a risk of serious injury and death, when NISRA *could* reasonably accommodate those participants.

"[I]n examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009). The complaint persistently alleged that the refusal to accommodate, by administering Diastat, effectively denied a benefit "on the basis of" M.M.'s, N.R.'s, and other epileptic participants' disability.

**B.     The ADA's reasonable accommodation standard**

Second, Defendants ask this Court to declare the United States' requested accommodation unreasonable as a matter of law. However, Defendant provides no previous case declaring the request for a service-providing entity to administer an emergency prescription drug, like Diastat, an unreasonable accommodation as a matter of law. I decline to be the first to do so.

Defendant's brief relies on cases declaring a requested accommodation unreasonable as a matter of law when plaintiffs were requesting: (1) the administration of drugs in excess dosages, *see Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754, 757 (8th Cir. 1998); (2) the addition of staff members to administer medical prescriptions, *see McDavid v. Arthur*, 437 F. Supp. 2d 425, 428 (D. Md. 2006); or (3) the monitoring of a child-student's blood sugar, *see B.M. v. Bd. of Edu. of Scott Cty., Ky.*, 2008 WL 4073855, at *23 (E.D. Ky. 2008).

None of Defendant's examples carry weight in the context of Plaintiff's complaint. First, all of the cases cited were decided at the motion for summary judgment stage, and not on the pleadings alone. Second, Plaintiff alleges Diastat was developed so people without medical training can administer the medication. The complaint also suggests that any training required to administer Diastat is comparable to the training already provided by NISRA: staff learn how to properly respond to seizures, feed children with gastronomy feeding tubes, and to administer other prescription and emergency drugs.

The Defendant also relies on the Food and Drug Administration, Physician's Desk Reference ("PDR"), and drug manufacturer standards to assert the requested accommodation is unreasonable as a matter of law.[1] But these standards do not require such a finding. The PDR requests the person administering Diastat to receive instruction from the prescribing physician, distinguish certain types of seizures, and provide post-administration monitoring of the individual receiving Diastat. The PDR standards do not make Plaintiff's request patently unreasonable, especially when NISRA staff already have training related to seizures and certain staff members already provide constant one-on-one care for participants.

Finally, Defendant claims the DOJ previously litigated on the grounds that Diastat is an unreasonable accommodation. In *K.S.R. v Pete Geren, Sec.'y of the Army, et, al.*, the DOJ denied that it would be a reasonable accommodation for Army staff to administer Diastat, and stated that "[t]he [Diastat] accommodations sought are unduly burdensome and are not required by law." Defendant argues this is an admissible admission, fatal to Plaintiff's instant case. But "[r]easonableness is not a constant. To the contrary, what is reasonable in a particular situation may not be reasonable in a different situation - even if the situational differences are relatively

---

[1] Per Defendant's request, the Court takes judicial notice of the documents from the FDA, PDR and the drug manufacturer, attached as exhibits to Defendant's motion to dismiss. *See U.S. v. Howard*, 381 F.3d 873, 880 (9th Cir. 2004) (taking judicial notice of content from the PDR).

slight." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992); *see also Sierra Club v. Secretary of the Army*, 820 F.2d 513, 517 (1st Cir.1987). The administration of Diastat may very well be a reasonable accommodation in one situation and yet unreasonable in another situation. But even if the DOJ's prior argument is in conflict with its position in the instant case, the Attorney General "is not estopped from changing his view." *See Miller v. California Speedway Corp.*, 536 F.3d 1020, 1032–33 (9th Cir. 2008) (citing *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993)).

Ultimately, what constitutes a reasonable accommodation under Title II depends on a variable mix of factors; factors not entirely obtainable at the pleading stage. Discoverable facts, consistent with the complaint, could support a conclusion that the requested accommodation is reasonable under Title II.

**C.     NISRA's affirmative defenses**

Third, Defendants argue the accommodation requested would impose an undue administrative burden, fundamentally alter the nature of NISRA's services, and subject NISRA to an undue amount of liability. However, these affirmative defenses are not apparent from the face of the complaint, when drawing all reasonable inferences in Plaintiff's favor. *See Pisciotta*, 499 F.3d at 633.

Title II regulations require reasonable modifications in policies when necessary to avoid discrimination on the basis of disability unless doing so would fundamentally alter the nature of the service, *see* 28 C.F.R. § 35.130(b)(7), or would create undue financial and administrative burdens. *See School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n.17 (1987).

As a preliminary matter, Defendant's assertion that the administration of Diastat would fundamentally alter its services is an affirmative defense. *See Olmstead v. L.C. ex rel. Zimring*,

7

527 U.S. 581, 603 (1999) (citing 28 CFR § 35.130(b)(7)). Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c), not Rule 12(b)(6). *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975–76 (7th Cir. 2013). But procedural defect aside, I cannot find NISRA entitled to its affirmative defenses at this time.

To prove an undue burden, this Circuit requires Defendant to show "the costs are excessive in relation either to the benefits of the modification or to the [entity's] financial survival or health." *Vande Zande v. Wisc. Dep't of Admin.*, 44 F.3d 538, 548 (7th Cir. 1995). Similarly, the fundamental alteration defense allows a state to avoid making modifications to accommodate disabled individuals if it can "show that adapting existing institution-based services to a community-based setting would impose unreasonable burdens or fundamentally alter the nature of its programs or services." *Radaszewski ex. rel. Radaszewski v. Maram*, 383 F.3d 599, 611 (7th Cir. 2004). NISRA has not made such a showing at this stage in the litigation.

The complaint alleges that, given the seizure-related training and procedures Defendant already has in place, the requested accommodation is reasonable. What may constitute an undue hardship for one entity may not be an undue hardship for another entity. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692–93 (7th Cir. 1998). A ruling on Defendant's affirmative defenses requires more knowledge as to the nature of NISRA's services provided and the actual financial and administrative burdens the requested accommodation would impose.

Finally, Defendant asserts the requested accommodation would cause NISRA to violate state law. Even if a conflict exists between state and federal law, "state laws can be preempted by federal regulations and statutes." *See Hillsborough Cty. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985). Therefore, a conflict with state law would not bar Plaintiff from

obtaining the requested relief. However, whether preemption applies to this case is beyond the scope of this 12(b)(6) inquiry.[2] And after examining the facts pled and the stated legal claim under Title II of the Americans with Disabilities Act, I find Plaintiff is entitled to proceed on its complaint.

**IV.    Conclusion**

For the reasons discussed, Defendant's motion to dismiss is DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 11, 2013

---

[2] Courts have decided a preemption defense on a 12(b)(6) motion when: the complaint itself established a preemption defense, *see Morequity, Inc. v Naeem*, 2001 WL 1426518, at *1 (N.D. Ill. 2001); the plaintiff is potentially barred from bringing certain state law or statutory claims, *see Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Lateef v. Pharmavite LLC*, 12 C 5611, 2012 WL 5269619, at *2–3 (N.D. Ill. 2012); or the defense somehow divests the court of jurisdiction. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 550 (7th Cir. 2010). Defendant has not implicated preemption in any of the above manners.